NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.A., | Civil Action No. 21-964 (SRC) |
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff M.A. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises in the context of Plaintiff's turning 18 and entering adulthood. Plaintiff had been determined to be disabled as a child, and turned 18 in 2014.[1] On March 3, 2015, the Commissioner determined that, under the rules for determining disability in adults, Plaintiff was not disabled as of March 1, 2015. A hearing was held before ALJ Peter R. Lee (the "ALJ") on January 21, 2020, and the ALJ issued an unfavorable decision on February 5,

---

[1] Plaintiff was born on February 6, 1996 and turned 18 on February 6, 2014.

2020, finding that Plaintiff had not been disabled during the period in question. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of February 5, 2020, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform work at all levels of exertion, with certain non-exertional limitations, including a limitation to simple, routine tasks. At step four, the ALJ also found that Plaintiff had no past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on the ground that the step four residual functional capacity determination is not supported by substantial evidence. Plaintiff's argument is persuasive.

At step four, the ALJ formulated Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that since March 1, 2015, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can have occasional contact with supervisors and co-workers, but no contact with the general public; work must be performed in an environment free of fast-paced production requirements, where productivity is measured at the end of the day, and with only occasional changes to essential job functions; and he is able to do only simple and routine tasks.

(Tr. 19.) Plaintiff contends that nearly all the evidence of record does not support this determination, and that the one piece of evidence that the ALJ relied on, the report of Dr. Flaherty, the agency reviewing psychological consultant, is problematic, for two reasons: 1) it

does not constitute substantial evidence; and 2) the ALJ's reliance on it violates Third Circuit law.

At step four, the ALJ discussed and reviewed the evidence of record, and then presented the analysis and explanation of the weight given to various pieces of evidence. In short, as Plaintiff contends, the ALJ stated that he gave "significant weight" to the opinions of Dr. Flaherty, and little weight to everything else. (Tr. 25.) The ALJ explained his assessment of Dr. Flaherty's opinions as follows, in its entirety:

> I afford significant weight to the opinions of State agency (DDS) psychological consultant Dr. Sharon Flaherty (see 6F; 7F). On March 3, 2015, Dr. Flaherty noted generally "mild" or "moderate" limitations in the "paragraph B" criteria, but "marked" limitations for understanding, remembering and carrying out detailed instructions, and interacting appropriately with the public (6F/1-2). In summary, Dr. Flaherty opined that the claimant "can understand & follow short & simple instructions, learn and perform simple, repetitive tasks, behave appropriately and adapt to minor changes." She further opined that, "from a psych standpoint," he "can sustain focus, memory, basic social interaction and mental pace/persistence for simple, routine tasks" (6F/3). Dr. Flaherty is familiar with the Administration's standards for assessing "disability," reviewed the case record available as of her review, and her opinions are supported by objective medical evidence, including the claimant's performance on consultative examination with Dr. Brown (see 5F), and consistent with the limitations assessed in the decisional residual functional capacity. For instance, while Dr. Flaherty noted a "marked" limitation in interacting appropriately with the general public, consistent with the claimant's diagnosis of social anxiety/phobia, she noted only "moderate" limitations in accepting instructions and responding appropriately to criticism from supervisors, and in getting along with co-workers or peers without distracting them or exhibiting behavioral extremes (see 6F/2). These findings are consistent with other medical evidence in the record, including the claimant's "pleasant and cooperative" demeanor and "good" eye contact on consultative examination in December 2014 (5F/2). Accordingly, I have given significant weight to Dr. Flaherty's opinions in making the findings herein.

(Tr. 25-26.)

While there appears to be some length and detail to this paragraph, it is largely a summary of Dr. Flaherty's findings. The ALJ provided little specific, persuasive explanation of

3

the reasons for giving significant weight to Dr. Flaherty's opinion. While some very general reasons are given – e.g., "findings are consistent with other medical evidence" – the only specific evidence cited is Dr. Brown's evaluation. The ALJ cited only a few specific details from that evaluation, Dr. Brown's observations of pleasant and cooperative behavior and good eye contact.

Although the ALJ stated that Dr. Flaherty's opinions were given significant weight, after making that statement, the ALJ did not refer to Dr. Flaherty again. In the paragraph in which the ALJ put together the RFC formulation and explained the evidentiary basis for it, Dr. Flaherty was not mentioned. Instead, the ALJ explained the basis for the formulation as follows. Plaintiff is capable of simple and routine work because he has a low average IQ. (Tr. 27.) The ALJ cited his cooperativeness in the evaluations performed by Drs. Brown and Fleischer (even though the ALJ had concluded that Dr. Fleischer's opinions should be given little weight), and then concluded that Plaintiff is capable of occasional contact with supervisors and co-workers, but no contact with the general public. (Tr. 27.) Next, the ALJ again pointed to Dr. Fleischer and the observation that Plaintiff seemed "cranky" at the end of the evaluation session as the basis for the determination that Plaintiff is limited to work in an environment free of fast-paced production requirements, where productivity is measured at the end of the day. (Tr. 27.)

Thus, the ALJ's formulation made no mention of the opinion of the expert whose opinion was given significant weight, but there are several mentions of an expert whose opinion was entitled to little weight, Dr. Fleischer.

Plaintiff argues that the ALJ made an RFC determination "notable for the rejection of virtually all of the evidence." (Pl.'s Br. 11.) This is somewhat overstated. A more accurate statement would be that the ALJ made an RFC determination notable for overlooking or

4

discounting a great deal of very alarming and extreme evidence of misbehavior. In the context of this extreme factual record, no reasonable person could conclude that the ALJ's bland assessment of Plaintiff's functional capacity is supported by substantial evidence.

The ALJ wrote eight pages about the step four RFC analysis. Consider just one page of those eight, written by the ALJ, summarizing part of the factual record:

> The claimant's alleged symptoms and limitations are partially supported by the evidence of record. However, the overall record is not consistent with a finding of "disabling" limitations under the adult standard of disability. On psychiatric assessment at age 17 (see 3F/2-12), the claimant was noted to have a history of "making aggressive threats toward others, i.e., said he had a bomb on the bus, said he would light the school on fire. [and] researches weapons on the internet." However, there was no indication of a history of violent/homicidal behavior/ideation, suicide attempts/ideation, fire setting or criminal/legal issues. He was noted to be "uncooperative," offering "limited responses," though his mother indicated "help with anxiety" was an expectation regarding treatment (3F/2).
>
> The claimant was noted to be currently receiving psychiatric care with Dr. Nancy Durant, though his last appointment was three months ago. "Significant substance abuse" was noted, including huffing, cannabis, alcohol ("etoh") and nicotine. While his parents "den[ed] current use," he "reported to therapist, occasional use of cannabis." He was discharged from Oakwood School "due to safety concerns," as he "had told the bus driver he had a bomb," but "later retracted the statement." His mother reported that he "struggles with significant anxiety," particularly social anxiety, and "gets very worked up if friends are coming over." She indicated he is "too hard on himself," and that anxiety is a "big trigger for 'acting out,'" stating he is "very irritable, curses, mind is 'racing,' worries about everything, paces." The claimant "refused to elaborate on the nature of his anxiety," presenting as "guarded, oppositional and defiant in response to underlying anxiety." His parents also reported a history of ADHD, "noting he is restless, inattentive, easily distracted, and impulsive," but was "foggy" on a stimulant medication trial, i.e., Metadate, as well as a history of bipolar disorder, "but no clear evidence of depressive/manic episode" was noted. Rather, the psychiatrist indicated his "attitude and 'mouthiness' seem to be related to underlying anxiety." Additionally, no history or psychotic symptoms was noted, as well as no evidence of grandiosity or decreased need for sleep. The claimant's mother reported he had "almost overdosed on muscle relaxants and pain killers when 14 [years old]," but denied "he had an intent to die" (3F/3). Two prior inpatient hospitalizations were noted, 3 and 4 years ago, one of which was due to

5

>"huffing" (3F/4). His current medications included clonidine and Klonopin, with "good" compliance and response to both noted. He had stopped taking Metadate in October 2012 "due to feeling groggy" on the medication (3F/6).
>
>On mental status examination, the claimant was "guarded" and "uncooperative" with "poor" eye contact," but thought process was "generally goal-directed" (3F/7). He reported his mood as "fine," affect was "restricted," and he denied suicidal or homicidal ideation. While he was "uncooperative for assessment" of cognitive functioning, "poor" insight and judgment were noted. The claimant was diagnosed with generalized anxiety disorder (GAD), social phobia, oppositional defiant disorder (ODD), and ADHD, combined type (3F/8). He was assessed at a "Low Risk" level, though his anxiety was noted to be "grossly undertreated at present" (3F/10).   The claimant's IEP for the 2013-14 school year notes a "lengthy discussion was held regarding [his] recent behaviors including being disruptive in class, making false statements about drug usage, threatening to blow up the school, and recently running from staff and hanging from the fire escape which is two floors up."   It was reportedly "felt that he is escalating his behaviors in attempt to get expelled from school and in fact he has directly asked staff what he needed to do to get sent home" (see 4F/7). The claimant was "exited on 2/21/14 in 11th grade," as he was "refusing to continue in school" (4F/3).

(Tr. 21-22.)

This page alone reports a history of psychiatric hospitalizations, substance abuse problems, suicidal behavior, threats of violence, and something akin to expulsion from school. As just discussed, the ALJ's paragraph explaining the basis for the RFC formulation relies largely on a very few pieces of evidence: Plaintiff's IQ score and his limited cooperativeness in two evaluation sessions.   In the context of this record, these very few pieces of evidence do not constitute substantial evidence supporting the RFC determination.

The Third Circuit has held: "a single piece of evidence is not substantial if the Commissioner failed to resolve a conflict created by counterveiling evidence or if it is overwhelmed by other evidence -- particularly that offered by a treating physician."   Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000).   This speaks directly to the instant case.   Although the

6

ALJ here cited a few pieces of evidence, not just a single one, this is a case in which the ALJ failed to resolve conflicts[2] created by countervailing evidence. It is also a case in which the few pieces of evidence cited by the ALJ are truly overwhelmed by other evidence, as described.

Plaintiff also argues that the ALJ's reliance on the opinion of a non-examining physician, Dr. Flaherty, is contrary to Third Circuit law, as stated in Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008) ("We have consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician.") As already discussed, because the ALJ did not explain the use he made of Dr. Flaherty's opinion, the Court is unable to determine whether the decision is contrary to Brownawell.

In opposition, the Commissioner argues that the period under review is roughly a five-year period from the date of redetermination in 2015 until the date of the hearing in 2020. The Commissioner contends that records from that period are "sparse," and that Plaintiff failed to carry his burden of proof of disability. (Def.'s Br. 1.) The Commissioner also argues that the ALJ stated legitimate reasons for discounting the evidence from the period at issue that is contrary to the determination, and that Dr. Flaherty's opinion constitutes substantial evidence.

The Commissioner's position is not persuasive. The parties did not brief the question of whether, in the context of a reassessment of a disabled child at age 18, the Commissioner is legally entitled to ignore all evidence accumulated prior to that date. It is sufficient to say three

---

[2] The chief conflict is captured in this question: can this claimant maintain acceptable self-control for a workweek, resulting in acceptable behavior in the workplace? The ALJ did not even address, much less resolve, the conflict created by the countervailing evidence on this question.

7

things on this subject. First, the Commissioner has not offered this Court any legal authority supporting that proposition. Second, the ALJ referenced a great deal of evidence from prior to 2015 in the decision; this being the case, the Commissioner would be hard-pressed after the fact to argue that it is legally irrelevant. Third, the Commissioner's opposition brief contends that the ALJ's decision is supported by Dr. Flaherty's opinion – an opinion dated March 3, 2015, based on a review of records. If consideration of records from before age 18 was legally impermissible, on what evidence did Dr. Flaherty base her opinion?

Moreover, even if this Court reviewed the decision with blinders on, ignoring all the statements made by the ALJ about Plaintiff's history prior to the date of redetermination, it still would find that the decision does not comply with Third Circuit law. The Commissioner's opposition brief attempts to rewrite the ALJ's decision, arguing that the RFC determination is based on the substantial evidence of Dr. Flaherty's opinion. As already stated, although the ALJ wrote that he gave Dr. Flaherty's opinion significant weight, he did not reference it once when explaining the rationale for the RFC determination. Instead, as already explained, the rationale stated by the ALJ relies on a few small bits of evidence; the ALJ rejected and discounted all the contrary evidence from 2015 through 2020, particularly the 2018 report of Dr. Kaufman, the 2019 treatment records from Passion Care Center, and the 2019 records from Positive Reset, where, according to the ALJ, Plaintiff was described as intoxicated at his initial appointment. (Tr. 24.) The latest-occurring record of treatment in this record is the letter from APN Grant of Passion Care Center, who wrote:

> He experiences severe anxiety with panic attacks which affect his daily functioning and his ability to interact with others. Most days he is unable to leave the house as he becomes distress and often paranoid around others. . . . In my professional opinion, he is currently unable to maintain employment due to

8

the presenting symptoms of his psychiatric illness.

(Tr. 570.)   Thus, even if there were some valid legal basis to exclude pre-2015 evidence from consideration, this Court could not conclude that the Commissioner's decision is supported by substantial evidence.   Rather, the ALJ did not resolve the conflicts created by the countervailing evidence, as required by Morales.

For these reasons, this Court finds that the Commissioner's decision is not supported by substantial evidence.   The Commissioner's decision is vacated and remanded for further proceedings in accordance with this Opinion.


    s/ Stanley R. Chesler
    STANLEY R. CHESLER, U.S.D.J.

Dated: March 23, 2022